UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN J. HORNING,<br><br>        Plaintiff,<br><br>    v.<br><br>GINA RAIMONDO,<br><br>        Defendant. | Case No. 23-cv-00421-DMR<br><br>**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF TIMELINESS**<br><br>Re: Dkt. No. 18 |

Plaintiff Karen J. Horning filed a complaint against Defendant Gina Raimondo, Secretary of the Department of Commerce alleging claims in connection with her employment application to the United States Census Bureau (the "Census"). Defendant now moves to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docket Nos. 18 ("Mot."), 28 ("Reply").] Plaintiff opposed. [Docket No. 27 ("Opp'n").] At the July 13, 2023 hearing on the motion, the court notified the parties that it would convert Defendant's motion to dismiss into a motion for summary judgment on the issue of timeliness, and ordered the parties to file supplemental evidence. [Docket No. 30.] For the following reasons, Defendant's motion for summary judgment on the issue of timeliness is granted.

**I.    BACKGROUND[1]**

    **A.    Plaintiff's Allegations**

Plaintiff was diagnosed with young onset rheumatoid arthritis ("RA") as a teenager, which caused her hands, feet, and ankles to be severely deformed. Compl. ¶ 7. Although she had to use a wheelchair before the age of 30, Plaintiff is now able to walk with some mobility challenges. *Id.*

On November 18, 2019, Plaintiff applied for an office position with the 2020 Census,

---

[1] The statements in this section are taken from the complaint.

identifying herself as an individual with a disability. Compl. ¶ 8. On January 28, 2020, Plaintiff received a call from the 2020 Census San Francisco Office asking if she would like to work as an enumerator. *Id.* ¶ 11. Plaintiff responded that she had applied for an office position. *Id.* When the caller replied that the Census was only hiring enumerators, Plaintiff explained that she had RA and was disabled. *Id.* Plaintiff alleges that the caller then "abruptly" thanked her for her interest in working for the Census and hung up. *Id.*

Plaintiff called back the same day and requested to speak with a supervisor. Compl. ¶ 12. She recounted the previous call to supervisor Dean Book and informed him that she wished to file a grievance. *Id.* Plaintiff also stated that she would accept to work as an enumerator if that was the only position open at the time. *Id.* Plaintiff explained that she would nevertheless require an accommodation to perform the job and requested to be stationed in a relatively flat neighborhood. *Id.* Book informed Plaintiff that employees were generally stationed in their own neighborhoods and stated that her accommodation request would be met. *Id.* ¶ 13. Book then completed a job requisition to hire Plaintiff, making note of her accommodation requirement. *Id.* Plaintiff reiterated her intention to follow through with her complaint, and Book responded that they would discuss this at Plaintiff's orientation. *Id.* After the call, Book emailed Plaintiff to congratulate her on being hired by the Census. *Id.* ¶ 14. Plaintiff also received an auto-generated email requesting that she schedule a fingerprinting appointment for her background check. *Id.* Plaintiff booked an appointment for the following week and completed her fingerprinting at the San Francisco Census Field Office on February 7, 2020. *Id.* ¶¶ 14-15.

On March 27, 2020, Plaintiff received an email from the Census announcing that fingerprinting appointments were temporarily suspended as of March 18, 2020, and that appointments were canceled until further notice. Compl. ¶ 16. According to Plaintiff, the email made clear that this did not impact the processing of fingerprints received in February 2020. *Id.*

Around June 2020, Plaintiff reached out to the San Francisco Field Office to ask about scheduling a training orientation. Compl. ¶ 17. An unidentified individual informed Plaintiff that her background check had not yet been cleared, and that she could not attend an orientation until that step was completed. *Id.* The individual did not know why Plaintiff's background check was

still pending. *Id.*

Around July 2020, Plaintiff alleges that Census workers began canvassing San Francisco. Compl. ¶ 18. She spoke with several enumerators who shared that they had not applied to work for the Census until the middle of the government shutdown. *Id.* ¶ 18. None of them had a disability. *Id.* Throughout July 2020, Plaintiff reached out to the San Francisco Office to obtain more information about her background check, but her calls were never returned. *Id.* ¶ 20. Around the same time, Plaintiff learned that Book no longer worked with the Census. *Id.* ¶ 21. She requested to speak to the new Administrative Office Manager, Anne Lin, and left Lin numerous messages explaining that she was physically disabled, that she had made a request for an accommodation, and that her background check results were missing since February. *Id.* She also mentioned that she wanted to file a grievance. *Id.* Lin never returned Plaintiff's calls. *Id.* Plaintiff alleges that, at some point in July 2020, Lin became aware of her request for an accommodation and her attempts to file a complaint. *Id.* ¶ 22. According to Plaintiff, Lin was responsible for accommodating her disability but "her silence was a sign of hostility." *Id.* ¶¶ 22-23.

On August 14, 2020, Plaintiff communicated with an unidentified individual at the Census' Los Angeles Regional Office. Compl. ¶ 24. That employee allegedly discovered that Plaintiff's fingerprints had never been processed. *Id.* A few days later, on August 26, 2020, Plaintiff's background check cleared, and she completed the rest of the onboarding documents. *Id.* ¶ 25. According to Plaintiff, she was now "officially hired and pending assignment." *Id.* When Plaintiff called the Census' San Francisco Office, they informed her that someone would reach out to her. *Id.*

A couple of months later, on October 6, 2020, Plaintiff re-contacted the San Francisco Office and requested to speak to a supervisor. Compl. ¶ 28. Plaintiff asked why she had not received an assignment after having waited eight months for her background check to clear. *Id.* The supervisor did not have an answer for Plaintiff because he was new. *Id.* Plaintiff informed him that she wished to file a complaint for disability discrimination and wanted his help with the process. *Id.* Plaintiff alleges that the supervisor refused to help her, stating that the Census had

1   not discriminated against her because they had hired her.  *Id.*

2   Ultimately, Plaintiff claims that she was not given an enumerator assignment from August

3   26, 2020 through December 31, 2021, even though the Census "continued to hire new applicants,

4   process and assign them work."  Compl. ¶ 60.

### B.   Administrative Proceedings

Plaintiff first contacted the Equal Employment Opportunity Commission ("EEOC") on October 7, 2020 to file a grievance against the Census.  Compl. ¶ 30.  The same day, the Deputy Chief of the EEOC called Plaintiff to initiate a formal complaint.  *Id.* ¶ 31.  Plaintiff alleges that the administrative investigatory phase suffered several deficiencies including, for example, that the Regional Director of the Census' Los Angeles Region "abused his position and authority by involving himself in an EEO investigation at one of the field offices" and "testif[ying] from Los Angeles offering false statements as a matter of fact."  *Id.* ¶¶ 33-57.

On October 24, 2022, the EEOC issued its final decision, concluding that Plaintiff was not treated unfairly as compared to other applicants without a disability.  Compl. ¶¶ 6, 59.  Plaintiff originally alleged that she "signed for and received" the decision on October 31, 2022.  *Id.* ¶ 6.  She now appears to concede that she received the decision on October 24, 2022, as asserted by Defendants, as she no longer argues that her lawsuit was timely filed.  *See* Opp'n at 3 (arguing only that Plaintiff's lawsuit should be treated as timely due to equitable tolling).

### C.   Procedural History

Plaintiff filed her complaint on January 27, 2023 along with an application to proceed *in forma pauperis* ("IFP").[2]  [Docket Nos. 1, 2.]  The complaint alleges three claims for relief: (1) "failure to accommodate and failure to hire"; (2) "failure to accommodate, failure to hire, and retaliation"; and (3) "retaliation and hostile work environment."  Compl. ¶¶ 62-69.  On March 14, 2023, the court granted Plaintiff's IFP application and ordered the U.S. Marshal for the Northern District of California to serve Defendant with the complaint.  Counsel for Plaintiff subsequently appeared on June 1, 2023.  [Docket No. 21.]  Defendant moved to dismiss the complaint, arguing

---

[2] Plaintiff was self-represented at the time she filed her complaint.  She subsequently retained counsel.

4

1  in part that the action is barred in its entirety because Plaintiff failed to file suit within 90 days of
2  receipt of the EEOC's final decision.³  The parties submitted evidence in support of their
3  positions.  When a court considers matters outside the pleadings on a motion under Rule 12(b)(6),
4  it must convert the motion into a Rule 56 motion for summary judgment, and in so doing, the
5  court must give "[a]ll parties . . . a reasonable opportunity to present all the material that is
6  pertinent to the motion."  Fed. R. Civ. P. 12(d).  Accordingly, at the July 13, 2023 hearing, the
7  court notified both parties that it would convert Defendant's motion to dismiss into a motion for
8  summary judgment on the issue of timeliness.  [Docket No. 30.]  Plaintiff was ordered to file any
9  evidentiary support for the relevant factual allegations in her complaint or opposition brief, and
10 any other facts supporting her position on the issue of timeliness, by August 14, 2023.  By the
11 same date, Plaintiff was ordered to re-submit Exhibit A to her opposition brief and appropriately
12 authenticate the document by an affidavit or declaration pursuant to the district's local rules.
13 Defendant was also permitted to submit additional evidence on the timeliness issue.  After being
14 prompted by the court, *see* Docket No. 34, Plaintiff re-submitted and authenticated Exhibit A to
15 her opposition brief on September 22, 2023.  [Docket No. 35 (re-filed with title page at Docket
16 No. 37).]  Nothing else was filed.

17 **II.     LEGAL STANDARDS**
18        A court shall grant summary judgment "if . . . there is no genuine dispute as to any material
19 fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden
20 of establishing the absence of a genuine issue of material fact lies with the moving party.
21 *Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477
22 U.S. 317, 323 (1986)).  The court must view the evidence in the light most favorable to the non-
23 moving party.  *Fresno Motors, LCC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir.
24 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  A genuine factual issue
25 exists if sufficient evidence favors the non-movant such that "a reasonable [judge or] jury could

---

³ Defendant makes several other arguments in support of her motion to dismiss.  *See* Mot. at 2. Because the court finds that Plaintiff's claims are time-barred, it does not reach Defendant's remaining arguments.

1    return a verdict for the nonmoving party.  *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200

2    F.3d 1223, 1229 (9th Cir. 2000) (alteration in original) (quoting *Anderson*, 477 U.S. at 248).  The

3    court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact.

4    *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting *Anderson*,

5    477 U.S. at 255).

6        To defeat summary judgment once the moving party has met its burden, the nonmoving

7    party may not simply rely on the pleadings, but must point to specific facts, by affidavit or as

8    otherwise provided by Federal Rule of Civil Procedure 56, showing that a genuine issue of

9    material fact exists.  *Devereaux*, 263 F.3d at 1076.  More than a "scintilla of evidence" must exist

10   to support the non-moving party's claims.  *Pomona*, 750 F.3d at 1049 (quoting *Anderson*, 477

11   U.S. at 252).  A showing that "there is some 'metaphysical doubt' as to the material facts as issue"

12   will not suffice.  *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (quoting

13   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  "Where the

14   record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there

15   is no genuine issue for trial."  *Pomona*, 750 F.3d at 1049-50 (quoting *Matsushita*, 475 U.S. at

16   587).

17   **III.   DISCUSSION**

18       In her opposition brief, Plaintiff agrees to dismiss her third claim for disability-based

19   harassment, her claims under the Americans with Disabilities Act and Title VII, and her claim

20   based on improper processing of her EEOC complaint.  Opp'n at 1.  She seeks to file a First

21   Amended Complaint focused only on her claims for disability discrimination and retaliation under

22   the Rehabilitation Act.

23       Defendant moves to dismiss all claims as time-barred because Plaintiff did not file her

24   lawsuit within 90 days of receiving the EEOC's right-to-sue letter.  Mot. at 6.  Plaintiff does not

25   dispute that she failed to initiate this lawsuit within the 90-day statute of limitations; instead, she

26   contends that she is entitled to equitable tolling of the statute of limitations.[4]  *See* Opp'n at 3.

---

[4] Defendant offers the declaration of Paul Redpath to establish the date Plaintiff received the EEOC's final decision.  [Docket No. 19 (Paul Redpath Decl., May 12, 2023).]  Redpath, Chief of

1    When Congress enacted the Rehabilitation Act, it incorporated the administrative

2 exhaustion requirements of Title VII, 42 U.S.C. § 2000e-16(c). *See* 29 U.S.C. § 794a(a)(1); *see*

3 *also Bullock v. Berrien*, 688 F.3d 613, 615 ("the Rehabilitation Act . . . incorporates the

4 administrative exhaustion procedures of Title VII of the Civil Rights Act of 1964"). Like Title

5 VII, the Rehabilitation Act requires a plaintiff to file a charge of discrimination with the EEOC

6 prior to filing a lawsuit. *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 383 (9th Cir.

7 1997) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). If the EEOC

8 dismisses the charge, the plaintiff must file a civil action within 90 days of the dismissal of the

9 charge. 42 U.S.C. § 2000e-5(f)(1) ("If a charge filed with the [EEOC] . . . is dismissed by the

10 [EEOC], . . . the [EEOC or other authorized entity] shall so notify [the claimant] and within ninety

11 days after the giving of such notice a civil action may be brought . . .."). The 90-day period

12 "operates as a limitations period." *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119,

13 1121 (9th Cir. 2007 (citing *Scholar v. Pac. Bell*, 963 F.2d 264, 266-67 (9th Cir. 1992)). If the civil

14 action is not filed within the 90-day period, "then [it] is time-barred." *Payan*, 495 F.3d at 1121.

15    The 90-day statute-of-limitations is "subject to the doctrine of equitable tolling." *Nelmida*,

16 112 F.3d at 384 (citing *Scholar*, 963 F.2d at 266-67). However, the doctrine is applied

17 "sparingly." *Nelmida*, 112 F.3d at 384 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96

18 (1990)); *see also Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999), *as amended* (Mar. 22,

19 1999) ("Equitable tolling applies . . . when extraordinary circumstances beyond the plaintiff's

20 control made it impossible to file a claim on time."). The Supreme Court has "allowed equitable

21 tolling when the statute of limitations was not complied with because of defective pleadings, when

22 a claimant was tricked by an adversary into letting a deadline expire, and when the EEOC's notice

23 of the statutory period was clearly inadequate." *Scholar*, 963 F.3d at 268 (citing *Irwin*, 498 U.S. at

24 111 and *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (per curiam)).

---

26 the Program Implementation Division for the Office of Civil Rights, asserts that he transmitted the EEOC's final decision to Plaintiff by email on October 24, 2022. Redpath Decl. ¶ 8, Ex. B (copy
27 of the email sent to Plaintiff via secure file transfer system Kiteworks). On the same date, Redpath received electronic confirmation that Plaintiff downloaded the final agency decision. *Id.*
28 ¶ 11, Ex. E (copy of the electronic download confirmation). Plaintiff submitted no evidence to counter these facts.

7

Accordingly, "[c]ourts have been generally unforgiving . . . when a late filing is due to [the] claimant's failure to 'exercise due diligence in preserving his [or her] legal rights.'" *Scholar*, 963 F.3d at 268 (quoting *Irwin*, 498 U.S. at 96).

Plaintiff advances two grounds for equitable tolling: her prior status as a self-represented plaintiff and "additional extraordinary obstacles" related to her disability. With respect to the first, Plaintiff contends that unlike the plaintiff in *Fitten v. Whitley*—a case proffered by Defendant— she is not an experienced attorney. Opp'n at 4 (citing *Fitten v. Whitley*, No. 21-cv-00513, 2021 WL 4776975 (E.D. Cal. Oct. 13, 2021) (dismissing Title VII and ADA claims where self-represented plaintiff who was also an attorney did not initiate suit within 90 days of receipt of final agency action by email)). That argument is not compelling. Ignorance of the law due to a plaintiff's *pro se* status is not a basis for equitable tolling. *See Gray v. Shinseki*, No. C-12-03109 JCS, 2013 WL 1891387, at *2-3 (N.D. Cal. May 6, 2013) ("A plaintiff's pro se status does not mean she should be treated differently than a plaintiff represented by counsel.") (citing *Payan*, 495 F.3d at 1127); *Payan*, 495 F.3d at 1127 ("Payan's *pro se* status does not afford her different treatment under these standards.").

Next, Plaintiff argues that her untimely filing should be excused because she suffers from RA and mental health conditions that impacted her executive functioning between the time she received the agency's final decision and when she filed the complaint. Opp'n at 4. In support of her argument, Plaintiff offers a letter signed by her psychiatrist, Neelam Sachdev. [Docket No. 35.]

Defendant originally objected to Sachdev's letter and to Plaintiff's new factual assertions on multiple grounds. First, Defendant argued that a plaintiff "cannot avoid dismissal by alleging new facts in an opposition to a motion to dismiss." Reply at 2 (citing *Abbot v. Experian Info. Solutions*, 179 F. Supp. 3d 940, 946 (N.D. Cal. 2016) (quoting *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)). Second, Defendant stated that Plaintiff failed to present these assertions "in a cognizable manner" because she did not authenticate Exhibit A by an affidavit or declaration. *Id.*, n.1. (citing Civil L.R. 7-5(a); *see also GTE Mobilnet of Cal. Ltd. P'ship v. City of Berkeley*, No. 20-cv-05460-DMR, 2022 WL 562756, at *2 (N.D. Cal. Feb. 24,

8

2022) ("Given counsel's failure to authenticate the documents, the court held that it could not consider them in ruling on the motion")). Plaintiff has since re-submitted and authenticated Exhibit A. In addition, Defendant has now had an opportunity to respond to Plaintiff's argument.

Plaintiff's assertions do not justify invoking equitable tolling. In limited circumstances, a plaintiff's mental state "may equitably toll administrative deadlines if a plaintiff meets a two-part test." *Johnson v. Lucent Technologies, Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011) (citation omitted); *see also Friend v. Hegarty*, No. 5:15-CV-04506-HRL, 2017 WL 1164291, at *6 (N.D. Cal. Mar. 29, 2017). "First, a plaintiff must show his mental impairment was an extraordinary circumstance beyond his control by demonstrating the impairment was so severe that either (a) plaintiff was unable rationally or factually to personally understand the need to timely file, or (b) plaintiff's mental state rendered him unable personally to prepare [a complaint] and effectuate its filing." *Id.* (citation omitted). "Second, the plaintiff must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances." *Id.* (citation omitted).

Plaintiff argues that the unprecedented shortage of Adderall in the Fall and Winter of 2022 affected her executive functioning. *See* Opp'n at 4; [Docket No. 35.] During this time, Plaintiff also experienced a three-and-a-half-week delay in getting a necessary injection to treat her RA symptoms. *Id.* Without these necessary medications, it took Plaintiff "all the available time to prepare her documents." *Id.* In addition, the medication issues described by Plaintiff required her to "spend an inordinate amount of time filing MediCal appeals, calling pharmacies, and attending additional doctor appointments that were needed in order to titrate her medications." *Id.* The letter from Plaintiff's psychiatrist is dated June 14, 2023 and states:

> I have been seeing Karen Horning since 7/21/2020. She has been diagnosed to have Bipolar Disorder and ADHD Predominantly inattentive presentation. Karen, also, has multiple medical problems. Due to shortage of Adderall, she was unable to get her ADHD medication in November and part of December 2022. The medication was changed to Vyvanse and it took 3 months for the therapeutic dose to be established. Due to not having medications for ADHD, she was not focused and was very distracted, unorganized and her executive functioning was very limited. This prevented her from doing the necessary paperwork that was required of her and made her day to day functioning very disorganized and difficult.

None of these circumstances warrant equitable tolling. Although Plaintiff faced medical challenges during the relevant timeframe, the evidence does not establish that she was "unable rationally or factually to personally understand the need to timely file." *See Johnson*, 653 F.3d at 1010. Plaintiff's overarching claim that she "was very distracted, unorganized and her executive functioning was very limited," *see* Opp'n at 4-5, falls below the necessary threshold. The Ninth Circuit has found equitable tolling appropriate where the plaintiff "presented overwhelming evidence that she was completely psychiatrically disabled during the relevant limitation period," including evidence that she had "attempted suicide numerous times—and may do so again . . . [and] is unable to read, open mail, or function in society" due to her mental health condition. *Stoll*, 165 F.3d at 1242. In contrast, courts have found that assertions more akin to Plaintiff's are not sufficient to invoke equitable tolling. *See, e.g.*, *Friend*, 2017 WL 1164291, at *6-7 (Title VII case finding equitable tolling did not apply to 90-day statute of limitations after receipt of a right-to-sue notice where the plaintiff was unhoused, had post-traumatic stress disorder, and suffered from medication side effects); *Kuklok v. United States Dep't of Veterans Affs.*, No. 19-CV-02958-DMR, 2020 WL 4051561, at *5 (N.D. Cal. July 20, 2020), *aff'd sub nom. Kuklok v. U.S. Dep't of Veterans Affs.*, No. 21-15105, 2022 WL 256361 (9th Cir. Jan. 26, 2022), *and aff'd sub nom. Kuklok v. U.S. Dep't of Veterans Affs.*, No. 21-15105, 2022 WL 256361 (9th Cir. Jan. 26, 2022) (Privacy Act case holding equitable tolling was not warranted where plaintiff alleged "outrageous conduct" on behalf of the defendant, extraordinary disability that affected his comprehension, and at least ten serious medical conditions that made it difficult to discover, prepare, and file legal actions).

In addition, as in *Friend v. Hegarty*, Plaintiff managed to file this lawsuit along with an IFP application. This suggests that she was able to advance and protect her legal interests. *See Friend*, 2017 WL 1164291, at *7; *see also Johnson*, 653 F.3d at 1010 (contrasting plaintiff's active participation in lawsuits with claims that he was forced on mental disability for twenty years, was unable to manage his day-to-day affairs, and was of unsound mind). In other words, Plaintiff has not—and cannot—establish that her mental state rendered her unable to personally prepare a complaint and effectuate its filing. *See Johnson*, 653 F.3d at 1010.

Because Plaintiff has not offered evidence demonstrating that her mental impairment was an extraordinary circumstance beyond her control, she has failed to show that a dispute of fact exists as to whether equitable tolling applies.

## IV.     CONCLUSION

In conclusion, Defendant's motion for summary judgment on the issue of timeliness is granted.  The case is dismissed with prejudice.  The Clerk shall close the file in this matter.[5]

**IT IS SO ORDERED.**

Dated: October 23, 2023

_____
Donna M. Ryu
Chief Magistrate Judge

---

[5] On August 16, 2023, Plaintiff's counsel filed a motion to withdraw along with Plaintiff's consent to the withdrawal.  [Docket No. 32.]  Defendant did not oppose.  [Docket No. 33.]  The motion is granted.